UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued October 18, 2005
Decided November 29, 2005

**Before**

Hon. RICHARD A. POSNER, *Circuit Judge*

Hon. MICHAEL S. KANNE, *Circuit Judge*

Hon. ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 04-2918

| | |
|---|---|
| LIANG HUI ZHENG,<br>     *Petitioner*,<br><br>     *v.*<br><br>ALBERTO R. GONZALES*, Attorney General<br>     of the United States,<br>     *Respondent*. | Petition for Review of an Order<br>of the Board of Immigration<br>Appeals<br><br>No. A77 122 945 |

**ORDER**

Liang Hui Zheng, a Chinese citizen, applied for asylum, withholding of removal, and relief under the Convention Against Torture (CAT) in May 2000.  He claimed that he feared persecution in China because *his parents* violated the one-child policy by having a second child.  The immigration judge denied his application on the basis of an adverse credibility finding.  In June 2004, the Board of

---

*Pursuant to Federal Rule of Civil Procedure 43(c)(2), we have substituted the current Attorney General of the United States, Alberto R. Gonzales, for his predecessor as the named respondent.

Immigration Appeals summarily affirmed without opinion. Since the IJ's credibility finding is supported by substantial evidence, we deny the petition.

Zheng is from Fujian province in China. In the spring of 1988, when he was six years old, his mother became pregnant with his younger sister. At that point, Zheng claims that Chinese government officials, seeking to enforce China's one-child policy, began threatening the family. Zheng's submissions to the immigration court describe three incidents in particular. In the first incident, Zheng's mother refused the officials' request to terminate her pregnancy, and the officials threatened Zheng's parents with fines and imprisonment for violating the policy. On another occasion, the family returned to their home to find that several items of their property had been damaged; neighbors informed them that the damage had been carried out by government officials. In the third incident, Zheng's father was detained for getting into an altercation with officials who had again threatened the family with fines and imprisonment if Zheng's mother did not abort her current pregnancy. Zheng's father was released after four or five days in custody, during which time he was interrogated and denied food.

The family was concerned for their safety and decided they had to separate. Zheng was sent to live with an aunt in a nearby town. Zheng's parents also moved to a nearby town. Zheng claims that Chinese government officials were still attempting to find and punish his family after his sister was born in December 1988.

Zheng's mother and aunt arranged for him to come to the United States with the help of a "snakehead" in 1999. Zheng was detained on arrival at Los Angeles International Airport. Although he told the immigration inspectors he was coming to the United States for economic reasons, Zheng subsequently applied for asylum, withholding of removal, and CAT relief. The IJ denied all relief, finding Zheng not credible.

Zheng now challenges this adverse credibility finding. Specifically, he says that the IJ did not credit his explanations for inconsistencies the IJ identified. We will uphold the IJ's adverse credibility finding if it is supported by "specific, cogent reasons." *See Ssali v. Gonzales*, 424 F.3d 556, 561–62 (7th Cir. 2005) (internal citation and quotation marks omitted).

The IJ based his adverse credibility finding on several factors, but chief among them were inconsistencies between Zheng's testimony, his earlier statements to immigration inspectors, and affidavits submitted by his mother and aunt. For example, Zheng did not tell immigration inspectors in his airport interviews that he feared harassment in China based on his family's violation of the one-child policy. In fact, he did not mention the one-child policy at all, instead

claiming that he was coming to the United States for economic opportunities. An IJ may base an adverse credibility finding on an airport interview if the interview is reliable, *Balogun v. Ashcroft*, 374 F.3d 492, 504 (7th Cir. 2004), and the interviews here meet all of the *Balogun* factors for reliability. Specifically, the interview transcripts show that a translator was provided. *See id.* at 505. In addition, Zheng's answers do not suggest that he did not understand the questions, and Zheng did not appear to be reluctant to answer; he admitted his entry documents were false, and informed inspectors about the man who gave him these documents. *See id.* Finally, the inspectors asked questions designed to elicit an asylum claim, such as asking Zheng if he feared returning to China and if he believed that he would be harmed if he returned. *See id.*

The IJ also pointed out that Zheng's testimony regarding the timing of the principal events supporting his asylum claim differed in significant respects from the information that Zheng's mother and aunt provided in affidavits. Zheng testified that the harassment of his family began in 1988 when his mother became pregnant with her second child. But the affidavits do not mention any harassment in 1988. Both of these affidavits state that the family was harassed in 1989, after Zheng's younger sister was born, when the family was unable to pay the fine assessed for violating the one-child policy. Although minor inconsistencies are not a proper basis for an adverse credibility finding, *Uwase v. Ashcroft*, 349 F.3d 1039, 1043 (7th Cir. 2003) (inconsistency regarding source of financial support), the inconsistent dates here concern the harassment that is the basis for Zheng's asylum claim. *See Pop v. I.N.S.*, 270 F.3d 527, 531 (7th Cir. 2001) (inconsistency of dates valid basis for adverse credibility determination when inconsistency goes to heart of the asylum claim). Zheng's testimony and asylum application focus on events that occurred before his sister was born, while the affidavits suggest that nothing significant happened until *after* Zheng's sister was born, and fail to mention what was arguably the most serious of the incidents described by Zheng—his father's detention.

Zheng argues that he can explain both of these inconsistencies. He says that, during the airport interview, he answered the questions according to the instructions of the snakehead who arranged his trip. With respect to the difference in dates, he says that he was only six at the time of the incidents, and therefore it is understandable that his dates might be slightly off. However, under the deferential standard of review we apply to credibility determinations, *Uwase*, 349 F.3d at 1041, we ordinarily do not reject such a determination just because an alternative explanation for an inconsistency is available. *See Krouchevski v. Ashcroft*, 344 F.3d 670, 673 (7th Cir. 2003). Therefore, the IJ was justified in relying on these inconsistencies in discrediting Zheng's testimony.

We also note that it is far from clear that Zheng would be statutorily eligible for asylum even if his story is true. His claim is a political-opinion claim grounded on 8 U.S.C. § 1101(a)(42)(B).[2] Under this subsection, persons are considered persecuted on account of their political opinion if they have been forced to undergo an abortion or sterilization procedure, have been persecuted for failing to undergo such a procedure, or have otherwise resisted a coercive population control policy. The circuits that have addressed this issue have generally agreed that children are not persecuted on account of their political opinion just because a parent was forced to undergo an abortion or sterilization procedure. *Chen v. U.S. Dep't of Justice*, 417 F.3d 303, 305 (2d Cir. 2005) (per curiam); *Wang v. Gonzales*, 405 F.3d 134, 143 (3d Cir. 2005).

For the foregoing reasons we DENY the petition.

---

[2]In this petition, Zheng has abandoned claims raised before both the IJ and the BIA that he was persecuted on account of his membership in a particular social group.